**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff**,

**Case No: 6:18-cr-37-PGB-DCI**

**v.**

**MICHAEL RON DAVID KADAR,**

**Defendant**.

____________________________/

**ORDER**

This cause comes before the Court on Defendant Michael Ron David Kadar's ("**Defendant**" or "**Kadar**") Motion to Dismiss the Indictment with Prejudice for Violation of His Sixth Amendment Right to a Speedy Trial. (Doc. 38 (the "**Motion**")). The United States responded in opposition (Doc. 43), Defendant replied (Doc. 46), and the United States filed a sur-reply. (Doc. 49). Upon consideration of the parties' submissions and the record, the Motion is denied.

## I. BACKGROUND

On April 21, 2017, the United States obtained a criminal complaint against Defendant (Doc. 1) and, through the Department of Justice's Office of International Affairs ("**OIA**"), transmitted a provisional-arrest request to Israel. (Doc. 43-1, ¶ 14). Israel acknowledged the request but elected to prosecute Defendant under Israeli law. (*Id.*). On February 28, 2018, a grand jury in this District returned the operative Indictment. (Doc. 3). Defendant Kadar was convicted in Israel in June 2018, and he remained imprisoned there until May 2024. (Doc. 43-1, ¶¶ 17, 26).

The record shows that the United States continued to seek Defendant's extradition while Israel prosecuted and imprisoned him, but Israel remained unwilling to extradite him. (*Id.* ¶¶ 14, 19–24, 27–29, 31–35). After Israel informed the United States on November 4, 2024, that Defendant had left Israel , the United States located him in Norway on November 21, 2024. (*Id.* ¶ 33; Doc. 43, p. 4). The next day, OIA submitted a provisional-arrest request to Norway. (Doc. 43, p. 4). Norwegian authorities arrested Defendant on November 26, 2024, and the United States submitted its full extradition request on December 17, 2024. (*Id.*). Following extradition proceedings and Defendant's appeals, Norway extradited Defendant to the United States on June 18, 2026. (*Id.* at p. 5). Defendant was arraigned in this District on June 22, 2026. (Doc. 26).

Kadar argues that the more-than-eight-year delay between indictment and arraignment violated the Sixth Amendment. (Doc. 38, p. 1). He principally contends that the United States should have submitted a full extradition package to Israel, pursued a temporary surrender, obtained an INTERPOL Red Notice sooner, and facilitated his access to United States counsel. (*Id.* at pp. 17–21). He contends that the delay impaired his ability to develop mental-health defenses and deprived him of a potential global plea resolution. (*Id.* at pp. 9–14, 21, 24; Doc. 46, pp. 1–4). The United States maintains that it diligently pursued extradition within the constraints imposed by Israel's prosecution and refusal to extradite, and that Defendant has not shown actual prejudice. (*See* Docs. 43, 49).

## II. LEGAL STANDARD

The Sixth Amendment guarantees an accused "the right to a speedy and public trial." U.S. CONST. amend. VI. The Government has a constitutional duty to make a diligent, good-faith effort to promptly bring an indicted defendant to trial. *United States v.* Hayes, 40 F.3d 362, 365 (11th Cir. 1994). Courts evaluate a constitutional speedy-trial claim by balancing four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No factor is "either a necessary or sufficient condition" to finding a violation; the factors are related and must be considered together with the relevant circumstances. *Id.* at 533. Thus, the prejudice factor must be weighed alongside the other factors. *Id.*

A post-indictment delay approaching one year generally triggers the full *Barker* inquiry. *Doggett v. United States*, 505 U.S. 647, 651–52 & n.1 (1992). If, after the threshold factor is satisfied, and the second and third factors weigh heavily against the Government, the defendant need not show actual prejudice. *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006). Conversely, unless the first three *Barker* factors uniformly weigh heavily against the Government, the defendant must demonstrate actual prejudice. "This is a high bar — indeed, the term 'heavily' is defined as 'ponderously, massively; burdensomely, oppressively'". *United States v. Vargas*, 97 F.4th 1277, 1288 (11th Cir.), *cert. denied*, 145 S. Ct. 330 (2024). If this high bar is not crossed, the defendant must show prejudice. *Id.* at 1289.

Actual prejudice is assessed in light of three interests: preventing oppressive pretrial incarceration, minimizing the accused's anxiety and concern, and limiting impairment of the defense. *Barker*, 407 U.S. at 532; *United States v. Machado*, 886 F.3d 1070, 1081–82 (11th Cir. 2018). Of these, impairment of the defense is the most serious. *Barker*, 407 U.S. at 532. Conclusory or speculative allegations do not establish actual prejudice. *Machado*, 886 F.3d at 1082.

## III. DISCUSSION

### A. Length of Delay

The interval between the February 28, 2018, Indictment and the June 22, 2026, arraignment was approximately eight years and four months, which readily exceeds the threshold for a full *Barker* analysis. The delay is considerable and weighs heavily against the United States. That conclusion, however, does not resolve the claim because the Court must consider the remaining factors and the circumstances that produced the delay. *Doggett*, 505 U.S. at 651–52; *Vargas*, 97 F.4th at 1287.

### B. Reason for Delay

Different reasons for delay receive different weight. A deliberate effort to hamper the defense weighs heavily against the Government. Negligence also weighs against it, though less heavily. A valid reason may justify an appropriate delay. *Barker*, 407 U.S. at 531. The absence of bad faith, therefore, does not, by itself, establish diligence. The Court considers the periods of Israeli prosecution and imprisonment, the period after Kadar's release, and the Norwegian extradition proceedings separately.

### *i. Israeli prosecution and imprisonment*

Kadar argues that the first evidence of extradition discussions produced by the Government dates to 2023. (Doc. 38, pp. 17–18). The OIA declaration describes earlier efforts: the April 2017 provisional-arrest request, communications with Israeli authorities, and efforts from 2017 to 2019 to explore a global resolution. (Doc. 43-1, ¶¶ 14–20). Thus, the record does not support the premise that the United States first pursued Kadar's return in 2023.

Kadar also asserts that the Government failed to obtain his temporary surrender, under Article VIII of the Protocol Amending the Convention between the United States of America and Israel of December 10, 1962 (the "**Extradition Convention**"). (Doc. 38, p. 18). Accordingly, the Defendant argues that the Government failed to act with diligence. The provisional-arrest request, however, is relevant evidence of diligence, but it is not equivalent to a completed formal extradition request and does not automatically discharge the Government's continuing obligation. Article XI of the amended Extradition Convention permits provisional arrest, pending a formal request and supporting documentation, to initiate extradition while the full extradition packet is being prepared. (Doc. 49, p. 7 (citations omitted)).

The pertinent question is whether the United States reasonably pursued an available means of securing Kadar's return. Diligence does not require futile legal gestures. *United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986); *United States v. Demirtas*, 204 F. Supp. 3d 158, 171 (D.D.C. 2016). Here, the Government relies not merely on Kadar's imprisonment, but on Israel's stated unwillingness to

extradite him and OIA's continuing communications with Israel's authorities. (Doc. 43-1, ¶¶ 14, 19–24). On that account, the principal obstacle was Israel's refusal to surrender Kadar, not simply the absence of a completed extradition package.

Temporary surrender requires a separate inquiry. Article VIII permits Israel to postpone extradition proceedings while its own investigation or prosecution is pending. If extradition is granted, Israel may defer surrender while the person is being prosecuted or serving a sentence, or may temporarily surrender the person on agreed conditions. Extradition Convention art. VIII (as amended). Temporary surrender is therefore an authorized option, not an outcome the United States could compel. The Court's conclusion rests on the record's account of Israel's unwillingness to surrender Kadar and the Government's continued efforts to secure his return. Taken together, the provisional-arrest request, the subsequent communications, and Israel's position distinguish this period from one in which the Government simply neglected a defendant whose location was known. The Court does not weigh the period of Israeli prosecution and imprisonment heavily against the United States.

Nor does the absence of a Red Notice tip this factor against the United States. For most of the relevant period, Defendant was in Israeli custody, and his location was known. (Doc. 43, p. 9 (citing Doc. 43-1, ¶¶ 8, 25, 30)). While the Defendant argues that the Government should have obtained a Red Notice once Israel notified it of his pending release, a Red Notice would not have compelled Israel to extradite

him. (Doc. 43-1, ¶ 8). It is pure speculation that Israel would have extradited the Defendant once he was arrested on a Red Notice.

### ***ii. Norwegian extradition proceedings***

When Israel advised that the Defendant had left the country, the United States located him in Norway within seventeen days, submitted a provisional arrest request the following day, and secured his arrest within a week. (Doc. 43, p. 4). The United States submitted its full extradition request to Norway on December 17, 2024, approximately three weeks after Kadar's arrest. (*Id.*). Kadar contested extradition, and the proceedings and appeals continued through May 22, 2026. (*Id.* at pp. 4–5). He was surrendered on June 18, 2026. (*Id.*).

The Court does not treat Kadar's exercise of his right to challenge extradition as misconduct or a waiver of his speedy-trial right. The relevant point is that the United States pursued a formal request and awaited the requested country's proceedings. The chronology does not identify an avoidable delay by the United States during that process. This period, therefore, does not weigh heavily against the United States.

In summary, the second factor does not weigh against the United States. The record shows that the United States initiated the treaty process by transmitting a provisional-arrest request to Israel on the same day it filed the criminal complaint—nearly a year before the Indictment. (Doc. 43-1, ¶¶ 8, 14). Israel then pursued its own prosecution, imprisoned the Defendant, and remained unwilling to extradite him. OIA nevertheless maintained its request and communicated with Israeli authorities regarding extradition and a possible resolution. (*Id.* ¶¶ 15, 17–18,

20). The resulting delay is materially different from a case in which the Government simply neglected to pursue a known defendant abroad.

### C. Assertion of the Right

A defendant's failure to assert the right to a speedy trial carries different weight depending on whether he knew of the pending charges. A defendant who did not know of the indictment is not charged with failing to invoke the right before arrest. *United States v. Villarreal*, 613 F.3d 1344, 1354–55 (11th Cir. 2010);[1] *see also United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). The Government points to communications with Kadar's Israeli counsel about a possible resolution of the United States charges. (Doc. 43, pp. 10–11; Doc. 49, p. 4). According to OIA, Israeli counsel reported in December 2019 that Kadar was not interested in a global resolution.[2] (Doc. 43-1, ¶ 19). Those communications support an inference of awareness, but they do not conclusively establish when Kadar personally learned of the Indictment, what counsel told him, or whether he could meaningfully assert the right through United States counsel. Assuming Kadar was unaware that his family and his attorney rejected the Government's offer to negotiate a global plea, the first three factors do not uniformly weigh heavily against the Government,

---

1 "[A] defendant 'is not to be taxed for invoking his speedy trial right only after his arrest' if he was unaware that he was under indictment or that 'the police had come looking for him.'" *Villarreal*, 613 F.3d at 1354 (citation omitted). However, this factor weighs more heavily against a defendant who knows of his charges but fails to assert his right to a speedy trial. *Id.* at 1354–55.

2 According to the Associate Director, from 2017 to 2019, OIA asked the Ministry of Justice in Israel to engage with the Defendant's counsel in an attempt to reach a global resolution. (Doc. 43-1, ¶ 19). In December 2019, Defendant Israeli counsel responded that the Defendant was not interested in a global resolution of the U.S. charges. (*Id.*).

because the reason-for-delay factor does not. Kadar must, therefore, demonstrate actual prejudice. *Vargas*, 97 F.4th at 1285, 1288–89.

**D. Prejudice**

***i. Incarceration and anxiety***

Kadar has not identified oppressive incarceration caused by unjustified delay in this prosecution or developed a claim for case-related anxiety. His Israeli imprisonment resulted from the Israeli prosecution and sentence. His Norwegian detention arose from the effort to secure his return on the federal charges and is not categorically irrelevant; nevertheless, he has not identified a particular oppressive consequence attributable to an avoidable United States delay during those proceedings. His principal claims of prejudice concern mental-health evidence and a potential plea resolution.

***ii. Mental-health evidence***

The passage of time can impair a mental-health defense even when no specific document has been destroyed. A later evaluation may not fully replicate an examination conducted near the time of the charged conduct. The issue, however, is whether Kadar has shown an actual impairment attributable to the challenged delay, rather than merely the absence of an ideal contemporaneous federal examination.

The alleged loss of mental-health evidence is speculative. The impairment inquiry typically concerns evidence that once existed but became unavailable due to delay—for example, a witness who died or disappeared, a materially faded memory, or a destroyed record. *See Doggett*, 505 U.S. at 654. The materials

identified in Defendant's Motion include a video of his March 2017 FBI interview; records of antipsychotic medication prescribed in 2017; psychological assessments from September and December 2017; a January 2018 expert opinion prepared for the Israeli proceedings; evaluations from 2018 and 2020; and Norwegian forensic materials from 2024 and 2025. (Doc. 38, pp. 8–14). These materials preserve information about his condition near the charged conduct and during subsequent years.

Kadar identifies no particular unavailable witness, missing clinical record, or lost observation necessary to a proposed defense. Nor does he identify a specific question material to that defense that the preserved materials cannot meaningfully address due to the delay. Their existence does not prove that a retrospective evaluation will be adequate for every purpose, but it undermines the claim that the passage of time necessarily forecloses a meaningful mental-health defense.

Federal Rules of Evidence 702 and 703 do not categorically disqualify an examiner because the examiner practiced abroad or bar an expert from considering preserved clinical materials. Any opinion must still satisfy the applicable evidentiary requirements. The Court neither decides admissibility nor determines the merits of any mental-health defense here. On the showing made, the asserted impairment remains speculative. *See Machado*, 886 F.3d at 1082.

#### ***iii. Potential plea resolution and counsel***

The OIA declaration describes preliminary inquiries through Israel's Ministry of Justice about Kadar's interest in a global resolution. It does not describe a concrete plea offer, proposed terms, or negotiations that reached an

agreement. It reports that Israeli counsel and, later, Kadar's family expressed no interest in discussing a resolution. (Doc. 43-1, ¶¶ 19, 22).

The Court does not treat those reports as a conclusive personal rejection of a plea offer or as a waiver by Kadar. Even putting the reports aside, however, the record identifies no actual offer lost through delay. Finding prejudice would require speculation about the terms the United States would have offered, the agreement of the participating authorities, Kadar's acceptance, and whether an earlier resolution would have produced a materially different outcome. Moreover, a defendant has no constitutional right to a plea offer. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). That principle alone does not resolve every possible claim involving a lost plea opportunity. Here, the dispositive deficiency is the absence of a concrete opportunity and a demonstrated causal connection between its loss and the delay.

Kadar's contention that the United States should have facilitated access to United States counsel does not fill that gap. Even assuming earlier access would have helped him evaluate a possible resolution or prepare a defense, he has not identified a resulting loss of evidence, an actual offer that became unavailable, or another specific harm caused by the challenged delay. The Court resolves only the Sixth Amendment speedy-trial claim presented in this Motion, not any separate claim concerning the right to counsel.

**E. Overall balance**

The length of the challenged delay weighs heavily against the United States. The Court also assumes that the assertion-of-the-right factor weighs heavily in

Kadar's favor and that an insufficiently explained portion of the post-release period counts against the Government as negligence. But the principal delay arose from Israel's prosecution, imprisonment, and unwillingness to surrender Kadar, followed by contested Norwegian extradition proceedings. The second factor does not weigh heavily against the Government.

Accordingly, actual prejudice is required under *Vargas*. Kadar has not shown that the delay materially impaired a mental-health defense, caused the loss of an actual plea opportunity, or produced another cognizable injury sufficient to establish his claim. Balancing all four factors, the Court finds no violation of the Sixth Amendment right to a speedy trial.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Michael Ron David Kadar's Motion to Dismiss the Indictment with Prejudice for Violation of His Sixth Amendment Right to a Speedy Trial (Doc. 38) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on October 6, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties